# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6658 | **DATE** | 1/20/2004 |
| **CASE TITLE** | Davis v. Bierman, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due ___ ___.

(3)  ☐  Answer brief to motion due___ ___. Reply to answer brief due___ ___.

(4)  ☐  Ruling/Hearing on __ ___ set for ___ __ at ___ ___.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on __ ___ set for __ ___ at ___ __.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on __ ___ set for ___ _ at ___ __.

(7)  ☐  Trial[set for/re-set for] on __ ___ at ___ __.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to __ ___ at ___ __.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion for summary judgment is granted.  This case is closed.

(11)  [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | **JAN 21 2004** | **24** |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | aed/lc | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

EARL SIDNEY DAVIS,                      )
                                        )
            Plaintiff,                  )
                                        )   No. 01 C 6658
        v.                              )
                                        )   HONORABLE DAVID H. COAR
DAVE BIERMAN, FRANCINE POWELL,          )
and TIMOTHY J. BUDZ,                    )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff Earl Sidney Davis filed a complaint against defendants Dave Bierman, Francine Powell, and Timothy J. Budz alleging their violation of 42 U.S.C. § 1983 ("section 1983"). Plaintiff is a civil detainee at a state facility, and defendants are all former and/or current employees thereof. His two-count complaint alleges that defendants confiscated certain legal documents (Count I) and blocked his telephone calls to his attorneys (Count II), thereby blocking his access to the courts in violation of his due process rights under the Fourteenth Amendment. Plaintiff is suing defendants, all former and/or current state employees, in their individual and official capacities.

Defendants' motion for summary judgment is now before this court. Defendants contend that plaintiff's claims fail because he cannot establish that he was denied his constitutional right of access to the courts. Moreover, they contend that: plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment; two of three defendants (Bierman and Powell) had no involvement in the events forming the basis for Count II of the complaint; and, in any event, all three defendants are entitled to qualified immunity.

24

For the reasons set forth below, defendants' motion for summary judgment in their favor is granted, and the complaint is dismissed in its entirety.

## I. Summary Judgment Standard

At summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See, e.g., Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). A triable fact issue exists "only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Schuster*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 321 (7th Cir. 2001) (quotation omitted)).

The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). "Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims," the non-movant must then present specific facts showing that there is an issue for trial. *Michael v. St. Joseph County, et al.*, 259 F.3d 842, 845 (7th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). To successfully oppose the motion, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue. *Celotex*, 477 U.S. at 324. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a summary judgment motion; "there

must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Summary judgment must be entered against a party who fails to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

## II. Factual Background

### A. The Parties' L.R. 56.1 Submissions

In responding to defendants' statement of material facts, and in setting forth his own statement of additional facts, plaintiff substantially failed to follow the dictates of the Local Rules. To a lesser extent, defendants failed to follow the Local Rules in responding to plaintiff's statement of additional facts.

LR 56.1 requires the moving party to set forth a statement of material facts consisting of numbered paragraphs supported by specific references to affidavits, parts of the record, or other evidentiary materials. *See* LR 56.1(a). The non-moving party must then respond with a statement either admitting or denying the moving party's numbered facts paragraphs. Specifically, LR 56.1 requires that the non-moving party respond to each paragraph and, where he disagrees, provide specific references to affidavits, parts of the record, or other evidentiary materials to support his disagreement. *See* LR 56.1(b)(3)(A).

The same rules apply to the non-moving party's LR 56.1(b)(3)(B) statement of additional facts and to the moving party's response thereto. That is, the non-moving party's statement of additional facts must also consist of numbered paragraphs supported by specific references to affidavits, parts of the record, or other evidentiary materials. Likewise, the moving party must support any stated disagreement with the non-moving party's additional facts by providing

specific references to affidavits, parts of the record, or other evidentiary materials. *See* LR 56.1.

When a party fails to admit or deny a fact in the manner prescribed by the Local Rules, the fact shall be deemed admitted. *See* LR 56.1(b)(3)(B); *see also Federal Trade Commission v. Febre*, 128 F.3d 530, 536 (7th Cir. 1997) (holding that district courts may deem party's facts admitted where adverse party fails to properly admit or deny the same). In short, "[a]n answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (internal quotations and citations omitted).

Rather than admitting or denying defendants' facts properly, plaintiff alternatively: (1) admitted portions of fact paragraphs, but failed to admit or deny the remainder of those paragraphs; (2) declined to admit or deny facts on the grounds that he lacked the requisite "personal knowledge;" (3) simply stated that he "agrees" with certain facts; (4) admitted certain facts, but nonetheless stated that he "takes exception" to them because of other additional facts that he believes are important; and (5) admitted "facts" different from those specifically set forth by defendants. This court deems all such facts admitted. *See, e.g., Jupiter*, 225 F.3d at 871; *McGuire v. United Parcel Service*, 152 F.3d 673, 675 (7th Cir. 1998); *Febre*,128 F.3d at 536.

Moreover, in setting forth his own statement of additional facts, plaintiff frequently cited his complaint as support for his asserted facts. This tactic is improper and insufficient at the summary judgment stage. It is well settled that, to withstand a motion for summary judgment, the non-moving party must go beyond the pleadings and point to competent record evidence establishing the existence of a genuine fact issue for trial. *See Celotex*, 477 U.S. at 324. Indeed, Fed. R. Civ. P. 56(e) provides, "When a motion for summary judgment is made and supported as

4

provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." As such, those factual assertions set forth by plaintiff and supported by citation to his complaint have been disregarded by the court. *See also Bliss v. Jennifer Convertibles, Inc.*, No. 01 C 8661, 2003 U.S. Dist. LEXIS 17435, at *44 n.14 (N.D. Ill. Sept. 30, 2003) (stating that plaintiff could not rely upon his complaint as "evidence" at the summary judgment stage).[1]

Plaintiff also cited numerous free-standing, unauthenticated documents in support of his statement of additional facts. As presented to the court, these documents do not constitute competent record evidence and do not suffice to create a genuine issue of material fact. *See* F.R.E. 901. The cited documents suffer from additional evidentiary deficiencies and, even setting aside all of their evidentiary deficiencies, do not suffice to create a genuine issue of material fact.

Defendants also failed to admit or deny several fact paragraphs properly. Specifically, in several instances, rather than expressly admitting or denying fact paragraphs, defendants simply admitted that plaintiff testified to the statements set forth therein. All such facts are deemed admitted, as well. *See, e.g., Jupiter*, 225 F.3d at 871; *McGuire*, 152 F.3d at 675; *Febre*, 128 F.3d at 536.

### B. The Parties

Plaintiff is currently a civil detainee in the Sexually Violent Persons Unit at the Illinois Treatment and Detention Facility in Joliet, Illinois ("Facility"). He was previously convicted of

---

[1] Defendants' responses to the subject paragraphs (*i.e.*, bare admissions to the effect that the complaint contained the same statements) were also improper. *See* LR 56.1. However, because those paragraphs were not supported by competent record evidence in the first instance, defendants will not be faulted for their failure to comply with the Local Rules in responding to them.

aggravated criminal sexual assault and sentenced to fifteen years in the Illinois Department of Corrections ("IDOC"). He served all or part of his sentence within IDOC before he became a civil detainee at the Facility.

During the relevant time period, the Illinois Department of Human Services ("IDHS") employed defendants at the Facility – Bierman as a Security Therapy Aide I ("STA I"), Powell as a Security Therapy Aide II ("STA II"), and Budz as the Director.

## C.    The Sexually Violent Persons Act

Illinois law provides a procedure by which the State may petition for the commitment of an individual who has been convicted of a sexually violent offense and is anticipated to be released from imprisonment or anticipated to enter into mandatory supervised release, on the grounds that he is a "sexually violent person" ("SVP"). *See* Sexually Violent Persons Act, 725 ILCS 207/1, *et seq.* ("the Act"). Thereafter, the individual is subject to commitment proceedings, which are civil in nature. *See* 725 ILCS 207/20.

The Act accords certain procedural rights to individuals who are the subject of petitions under the Act, which include the right to be present and to be represented by counsel, the right to remain silent, the right to present and cross-examine witnesses, and the right to receive a jury trial. *See* 725 ILCS 207/25. If the jury or the court determines that the individual is a "sexually violent person," the Act requires the court to enter a judgment on that finding and commit him. *See* 725 ILCS 207/35; *see also* 725 ILCS 207/40.[2]

Specifically, the person must be committed to IDHS's custody for control, care, and

---

[2] If the jury or the court is not satisfied beyond a reasonable doubt that the individual is an SVP, the Act requires the court to dismiss the petition and direct the individual's release (unless he is otherwise being lawfully held or restricted). *See* 725 ILCS 207/35.

treatment until such time as he is no longer an SVP. *See* 725 ILCS 207/40(a). The commitment order must specify either institutional care in a secure facility or conditional release. *See* 725 ILCS 207/40(b).[3] The court may, in its discretion, continue the hearing after entering a judgment that the person is an SVP for the purpose of obtaining more information to make that determination. *See* 725 ILCS 207/40(b)(1).

Individuals who are committed as SVPs are periodically re-examined pursuant to the Act. 725 ILCS 207/55. Individuals committed to the custody of the IDHS who are being held in a secured facility as SVPs may petition for conditional release. 725 ILCS 207/60. Moreover, individuals committed as SVPs may also petition for discharge from the custody of IDHS on the grounds that they are no longer SVPs. 725 ILCS 207/65.

### D. Plaintiff's Commitment Pursuant to the Act

After plaintiff had served part or all of his sentence within IDOC for his conviction on aggravated criminal sexual assault, the State petitioned to have him committed as an SVP (*In Re Commitment of Earl Sidney Davis*, Case No. 98 MR 404). On April 9, 2001, while in court in Madison County, Illinois, for his commitment hearing, plaintiff waived his right to a trial and stipulated to the allegations contained in the State's SVP petition. Accordingly, he was committed to IDHS's custody as a sexually violent person. Plaintiff was represented by counsel, Steven D. Griffin, at his commitment hearing.

A dispositional hearing was held on July 17, 2001. At that hearing, Dr. Paul Heaton testified for the State and rendered his opinion that plaintiff should be placed in a secure setting. Following that date, plaintiff had several additional court dates concerning his commitment.

---

[3] The Act provides that the Department may enter into an agreement with IDOC for the provision of a secure facility to house individuals committed under the Act. *See* 725 ILCS 207/50.

Griffin, plaintiff's counsel in connection with his commitment proceedings, was present on any occasions on which plaintiff, himself, was not. Plaintiff alleged in his complaint that these proceedings are ongoing.

### E.   Plaintiff's Other Litigation

In 1999, plaintiff filed a civil lawsuit (*Davis v. Budz*, Case No. 99 C 3009), in which he is also represented by counsel, Everett Cygal. That case has been consolidated with another case and is still pending in the United States District Court for the Northern District of Illinois.

Plaintiff testified at his deposition that whenever he receives documents, he sends them to Cygal, who makes copies for himself and then sends the documents to plaintiff.[4]

### F.   Background Concerning the Facility

The Facility was previously housed as a separate unit at the Sheridan Correctional Center ("Sheridan"). The State moved the Facility to its current location in Joliet in December 2000.

During the relevant time period, Security Therapy Aides ("STAs") bore responsibility for the care and security of the residents, staff, and physical facility. Defendant Bierman, an STA I, was a "back rover," responsible for tasks performed in the back area of the Facility (including preparation of writs and duplicating). Defendant Powell, as an STA II, had supervisory responsibility over the STA Is, including defendant Bierman.

When residents wanted to obtain photocopies of documents in their possession, they were required to follow a certain procedure. The Facility assigned certain residents responsibility for securing photocopies for other residents ("resident copiers"). To obtain copies, residents were required to fill out a request form and provide the form and the documents to be copied to the

---

[4] Neither party cited this fact or the underlying testimony.

resident copier. They were also required to pay for the copies either with money or with "points" earned at the Facility.

Generally, STA Is bore responsibility for overseeing the resident copiers. Prior to any copies being made, the STA Is scanned the material to be copied for contraband (including pornography). Subsequently, the resident copier made the copies and provided the original documents and copies to the requesting resident. Photocopying typically took place on the third shift.

## G.    The Events of July 12, 2001

Plaintiff believes that he was deprived of certain documents after he submitted them on July 12, 2001 for duplicating at the Facility.

On July 12, 2001, both defendant Bierman and defendant Powell worked on the third shift, which lasted 10:45 p.m. to 7:15 a.m. On that date, defendant Bierman was assigned responsibility for monitoring the resident who made photocopies for other residents (the "resident copier"). Plaintiff gave 184 documents to Harry Cain, the resident copier on that date, to be photocopied on behalf of resident Michael Lewis. Cain possessed a form indicating that copies were to be made for Lewis. Plaintiff did not submit a photocopy request form in his own name.

However, Cain told defendant Bierman that plaintiff gave him materials to be duplicated for Lewis. In fact, plaintiff did not fill out a request form because he was indigent and did not have the money to pay for the copies. Lewis offered to obtain the copies for plaintiff because he had the money and the points necessary to do so.

Defendant Bierman scanned the documents and noticed something unusual about

9

multiple documents. He showed his findings to defendant Powell. In Cain's presence, defendant Powell instructed defendant Bierman to confiscate the documents so that the administration could determine whether plaintiff should possess them.

The parties dispute the precise number of documents subsequently confiscated by defendant Bierman (rather than being returned to plaintiff along with the remainder of the documents he submitted). Defendants contend that defendant Bierman confiscated only two documents: (1) an IDHS sign-in sheet dated Saturday, May 19, 2001, which contained the names of doctors and therapists who worked at the Facility that day; and (2) a room roster of the residents at Sheridan. Plaintiff agrees that defendant Bierman confiscated those two documents. Further, it is undisputed that defendants Bierman and Powell do not recall confiscating any other documents. Consistent with their testimony, at plaintiff's request, Cain executed an affidavit stating that defendant Bierman confiscated two documents.

Cygal, plaintiff's attorney in his ongoing 1999 federal civil case, had obtained those two documents through the discovery process and forwarded copies thereof to plaintiff. Defendants considered the documents to be contraband. The documents belonged to the therapists, and residents were not permitted to enter into the area in which the therapists' documents were located. Defendants Bierman and Powell were also concerned with how plaintiff had obtained the sign-in sheet and the room roster.[5] At defendant Powell's instruction, defendant Bierman wrote an incident report regarding the confiscation of these two documents and attached the documents to the report. The sign-in sheet and roster sheet were returned to plaintiff on August

---

[5] Defendants Bierman and Powell contend that plaintiff's possession of the room roster constituted a breach of security, but plaintiff seeks to dispute that contention by pointing to the fact that the document was later returned to him. This dispute is immaterial.

10

17, 2001.

In addition to the above two documents, plaintiff believes that defendant Bierman confiscated two more (claiming that they were removed outside of Cain's presence). Specifically, he has alleged that defendant Bierman also confiscated a two-sided document containing two letters addressed to him at the Facility from Ralph Underwager, Ph. D., dated July 10, 2000 and July 23, 2000, respectively. Examination of the parties' statements of facts and admissions (both explicit and by operation of the Local Rules) dictates that the court must assume for purposes of defendants' motion that the July 10th and 23rd letters were also included in the documents submitted by plaintiff for duplicating and that they were not returned to him. *See infra*, n. 8.

The first letter from Dr. Underwager to plaintiff stated that Dr. Heaton had perjured himself at a recent trial by falsely claiming that he was certified in the use of the Hare Psychopathy Check List ("Hare PCL"). The second letter from Dr. Underwager to plaintiff stated that state psychologist Dr. Jacqueline Buck was not certified in the use of the Hare PCL and that numerous psychologists in Illinois were claiming that they could perform sexual predator commitment evaluations, but not all psychologists are qualified to do so.

Cygal, plaintiff's federal civil attorney, did not provide the documents to plaintiff. Rather, they were addressed directly to plaintiff at the Facility. As was his custom, upon receiving the letters, plaintiff forwarded them to Cygal so that he could make copies, and Cygal subsequently returned the documents to plaintiff. Thus, plaintiff's deposition testimony concerning this matter establishes that Cygal possessed his own copies of these two documents. Indeed, the two letters were attached as exhibits F and G, respectively, to plaintiff's August 21,

2001 complaint in this action, and plaintiff testified that Cygal provided those copies to him.[6] At his deposition, plaintiff testified that the particular copies of those letters that he had submitted for duplicating had not yet been returned to him by the Facility.

Plaintiff believes that he needed the July 10th letter when Dr. Heaton testified in court on July 17, 2001 at plaintiff's commitment hearing. He did not have either of the July 2000 letters from Dr. Underwager with which to confront Dr. Heaton on the stand on that day. Defendants Bierman and Powell did not know that plaintiff was scheduled to appear in court for a hearing on July 17, 2001.

## H.    Plaintiff's Telephone Calls

Plaintiff believes that defendant Budz blocked his telephone calls for one year.

Pursuant to the Illinois Administrative Code, residents at the Facility were permitted a reasonable amount of communication with others via mail, telephone calls, and in-person visits. Under the Facility's own policy, residents could make telephone calls during the daytime whenever they wish.

Employees at the Facility did not have the ability to block, prevent, record, or monitor collect calls placed by residents at anytime from June 1, 1998 through March 31, 2003. The Facility permitted plaintiff to place collect calls to his attorneys between the hours of 7 a.m. and 10:45 p.m. daily. Plaintiff was not permitted to make free telephone calls to his attorneys on the Facility's administrative lines because his attorney was willing to accept collect calls. That restriction was consistent with IDHS's Standard Operating Procedure ("SOP"). Under circumstances where attorneys were unable to receive collect calls, defendant Budz made

---

[6] Inexplicably, defendants did not cite any of this testimony or otherwise address the record evidence establishing that plaintiff's attorney, Cygal, also possessed copies of those documents.

12

exceptions to the SOP and permitted residents to communicate with them via the Facility's administrative lines.

From June 1, 1998 through March 31, 2003, the Facility (including when it existed as a separate unit at Sheridan) utilized a collect call system under which residents wishing to place a collect call dialed the number directly. The telephone provider at Sheridan was Consolidated Public Services. Upon the transfer of the Facility to Joliet, Ameritech became the provider of local telephone equipment and service, as well as the provider of collect call services. MCI became the lost-distance service provider from March 2000 until March 31, 2003. On April 1, 2003, Consolidated Public Services became the provider of both local and long-distance services at the Facility.

Plaintiff has claimed that he began experiencing telephone problems after the switch from Ameritech to MCI. Specifically, on one occasion, he attempted to place a telephone call to Cygal and received a recorded message stating, "At the request of customer, no collect calls can be made to this number." Plaintiff was subsequently connected to a live operator, whom he told that he was attempting to contact his attorney. The operator stated that she could not process the call and that plaintiff would need to speak to his warden or director. Subsequently, the same day, he successfully telephoned another attorney at Cygal's firm, who connected him to Cygal. At that time, plaintiff had no pending court dates in federal court. In October, 2000, plaintiff filed a motion in court in Madison County (where his commitment proceedings are ongoing) requesting a court order concerning the alleged blocking of his telephone calls.

At his deposition, plaintiff claimed that he was again unable to telephone Cygal under the current system. Following the Facility's switch to a new telephone vendor on April 1, 2003, the

13

Facility began to utilize a new collect call system requiring residents to use a personal identification number ("PIN"). Residents were required to submit a list of up to 30 individuals whom they wished to call, and they could amend their phone lists at any time.

Plaintiff completed the necessary paperwork on or about March 31, 2003, and as of May 1, 2003, he had received a PIN. Plaintiff was able to communicate with Cygal through the mail during the time he claims he was unable to telephone him (and there is no indication in the record that he was ever unable to do so).

## III. Analysis

### A. Count I Fails as a Matter of Law.

Count I is premised on the July 2001 confiscation of the sign-in sheet, the roster sheet, and the two July 2000 letters written by Dr. Underwager to plaintiff. Plaintiff claims that defendant Bierman's confiscation of those documents deprived him of his constitutional right of access to the courts.

In *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491 (1977), the Supreme Court established that prison inmates possess a constitutional right of access to the courts. Subsequent Supreme Court jurisprudence clarifying the contours of that right has made clear that states must not impede prisoners' efforts to pursue legal claims, but have no obligation to enable prisoners "to *discover* grievances [or] to *litigate effectively* once in court." *Lewis v. Casey*, 518 U.S. 343, 350, 352-53, 116 S. Ct. 2174, 2179, 2181 (1996).

"To prove a violation of [the constitutional right of access to the courts], a plaintiff must demonstrate that state action hindered his or her efforts to pursue a *non-frivolous legal claim* and that consequently the plaintiff suffered some *actual concrete injury*." *May v. Sheahan*, 226 F.3d

14

876, 883 (7th Cir. 2000) (citing *Lewis*, 518 U.S. at 350-54) (emphasis added). The injury, or

"prejudice," element (which stems from the constitutional principle of standing) has long been

required by the Seventh Circuit in its formulation of the claim. *See Ortloff v. U.S.*, 335 F.3d 652,

656 (7th Cir. 2003) ("to state a right to access-to-courts claim...a prisoner must make specific

allegations as to the prejudice suffered because of the defendants' alleged conduct"); *see also*

*Musgrove v. Detella*, No. 01-3758, 2003 U.S. App. LEXIS 17700, at *8 (7th Cir. Aug. 21, 2003)

("a prisoner claiming that he was denied access to the courts must prove that he suffered an

actual injury by showing that unjustified acts or conditions hindered his ability to pursue a

nonfrivolous legal claim") (citations omitted); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992)

(per curiam); *Martin v. Davies*, 917 F.2d 336, 340 (7th Cir. 1990).[7] Moreover, to prove this

alleged constitutional violation, a plaintiff must also demonstrate that the alleged deprivation of

his access to the courts was intentional, *see Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992),

and that the state's conduct was unreasonable, *see Ortloff*, 335 F.3d at 656.

## 1. Plaintiff's Claim

As an initial matter, plaintiff has barely articulated his access-to-courts claim, and its

contours are unclear at this late stage in the litigation. In his memorandum in opposition to

defendants' motion for summary judgment, plaintiff asserted that "he was unable to provide the

[confiscated] documents to his attorney for possible use in the impeachment of a State witness

[Dr. Heaton] testifying against him" at the July 17, 2001 hearing. He also argued that the

---

[7] The Seventh Circuit has recognized a limited exception to the injury/prejudice requirement in instances where the plaintiff has alleged a substantial and continuous deprivation. *See DeMallory v. Cullen*, 855 F.2d 442, 449 (7th Cir. 1988). That exception does not apply here, as plaintiff has conceded that the deprivation of the documents at issue was "temporary." In any event, plaintiff has not presented sufficient evidence to establish a substantial and continuous deprivation under Seventh Circuit precedent.

confiscation of the documents "prevent[ed] their use in court by the plaintiff or his attorney, amount[ing] to actions on the part of the defendants that impeded the plaintiff's efforts to pursue a legal claim or defense."

The only other delineation of plaintiff's claim came via his admission that he had already been committed as an SVP at the time of the July 17, 2001 hearing. On April 9, 2001, plaintiff waived his right to a trial and stipulated to the state's SVP petition; thus, he was committed to IDHS's custody as an SVP that day. Notwithstanding his admission, plaintiff contended in his brief:

> Plaintiff's purpose in providing his attorney with the Underwager letters was to provide evidence of perjured statements made by Dr. Heaton, the State psychologist and expert whose opinion *is used to determine whether the plaintiff is sexually violent and whether he should remain committed as a sexually violent person.* It cannot be said that plaintiff was pursuing a frivolous claim under the circumstances. Defendants [sic] actions in confiscation [sic] of his legal documents interfered with his ability to *prepare his defense and perhaps secure his release.*

(Emphasis added). Although this argument is not entirely coherent, it suggests that plaintiff's claim is this: if Dr. Heaton had been impeached with the help of the confiscated documents, the court might have concluded that plaintiff was not an SVP, and plaintiff, therefore, might have been released from IDHS custody.

As an initial matter, plaintiff has abandoned any claim concerning the sign-in sheet and the roster sheet by wholly failing to respond to defendants' arguments concerning the same (other than to concede that defendants may have acted "reasonably" in confiscating those documents from him). Moreover, he has not sought to allege, let alone explain, how the temporary deprivation of those documents, or of the letter relating to Dr. Buck, hindered his attorney's ability to cross-examine Dr. Heaton, to secure his discharge from IDHS custody, or to otherwise

alter his legal status. Thus, only the temporary deprivation of the July 10, 2000 letter from Dr. Underwager to plaintiff concerning Dr. Heaton is at issue.

It is well settled that the taking of legal documents necessary to litigate pending claims may form the basis for a claim of denial of the right of access to the courts. *See, e.g., Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992). However, plaintiff's claim fails as a matter of law on several independent grounds. At a minimum, he has failed to create a genuine issue of triable fact concerning three required elements of his claim: (1) whether he was pursuing an underlying claim or defense; (2) whether confiscation of the letter caused him cognizable injury or prejudice; and (3) whether defendants intentionally caused the alleged deprivation of his access to the courts.[8]

## 2. Plaintiff's Claim Fails as a Matter of Law

### a. Underlying claim or defense

Setting aside the lack of clarity concerning the contours of plaintiff's claim, he has not pointed to sufficient record evidence to show that he was pursuing a claim or defense in July 2001. There is no evidence indicating that plaintiff was actually pursuing any claim or defense at that stage -- merely three months after he had waived his right to trial, stipulated to the State's SVP petition, and consented to his own commitment as an SVP. Although plaintiff's *argument*

---

[8] Because of certain contradictory facts admitted by plaintiff and defendants via their failure to comply with the Local Rules, the court could conclude that the two July 2000 letters were submitted by plaintiff for duplicating and not returned to him, but that there is no evidence that defendants Bierman and Powell *confiscated* or, in fact, bore any responsibility for the disappearance of, the documents. However, because plaintiff's claim fails on numerous other independent grounds, it is unnecessary for the court to reach this issue. (Instead, the court will assume that it is undisputed that all four documents were confiscated and that plaintiff can establish "defendants' action" in the relevant sense.) For the same reason, it is unnecessary for the court to address whether plaintiff can establish that defendants' action was "unreasonable" or "unjustified."

suggests that he was then pursuing a claim that he was not a "sexually violent person," he has not presented any *evidence* to prove that he was asserting such a claim. *See generally* Fed. R. Civ. P. 56 & L.R. 56.1 (setting forth plaintiff's burden at summary judgment and corresponding evidentiary requirements). Plaintiff's claim, therefore, cannot even get off the ground. *Cf.*, *Christopher v. Harbury*, 536 U.S. 403, 122 S. Ct. 2179 (2002) (upholding dismissal of access-to-courts claim, in part because plaintiff failed to identify the underlying claim allegedly precluded by the government's action and its lost remedy; underlying claim is required element of this cause of action).

### b.   Prejudice

Even if plaintiff had provided sufficient identification and evidence of his underlying claim (and assuming that he was seeking either discharge from IDHS custody on the grounds that he was no longer an SVP or conditional release from the Facility), he has failed to present sufficient evidence to demonstrate injury or prejudice. "[G]eneral allegations of prejudice are insufficient" even to withstand a motion to dismiss within the Seventh Circuit. *Ortloff*, 335 F.3d at 655-56 (upholding dismissal of 1983 action where plaintiff alleged that "confiscation, seizure, and destruction of his legal materials severely prejudiced and adversely affected his ability to prosecute at least three pending lawsuits"). The types of harm that can satisfy the prejudice requirement include, "missed court deadlines, fail[ure] to make timely filings," or dismissal of legitimate claims, caused by the defendant(s)' actions. *Id.*, at 656. *See also Martin*, 917 F.2d at 340 (claim fails where plaintiff "offers no specific facts to support these allegations [of prejudice] – no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won") (citations

18

omitted).

Plaintiff's inability to show prejudice stems from multiple deficiencies in his presentation to the court. First, he has set forth no real argument or evidence concerning *how* the confiscation of the letter allegedly affected his attorney's ability to cross-examine or impeach Dr. Heaton at the July 17, 2001 hearing. In the letter, Dr. Underwager stated that Dr. Heaton had recently perjured himself by falsely testifying that he was certified in HARE PCL. Under the Federal Rules of Evidence (and corresponding Illinois law), the letter is a classic example of inadmissible hearsay. Even setting that deficiency aside, plaintiff did not provide any evidence that the HARE PCL tool was used by Dr. Heaton in formulating his opinion concerning plaintiff.

Moreover, plaintiff cannot show that the confiscation of the letter caused him to fail in his supposed claim for discharge or conditional release. First, he has made no showing that asking Dr. Heaton whether he previously falsely testified that he was certified in HARE PCL or, even successful impeachment of Dr. Heaton on that point, would have changed the outcome of the July 17, 2001 hearing. (Indeed, the record does not reveal what the outcome, if any, of that specific hearing was.) There is no evidence concerning whether and to what extent the state court relied upon Dr. Heaton's opinion on that date, especially in light of plaintiff's stipulation several months earlier to the State's SVP petition. In sum, plaintiff's bare speculation, as set forth in his brief, that "possible use" of the letter to impeach Dr. Heaton could have "perhaps secure[d] his release" is insufficient to create a triable fact issue and defeat defendants' motion. *See, e.g., Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001) (speculation is insufficient to defeat summary judgment).

Plaintiff's effort to show prejudice fails for another independent reason, as he admits that

19

his loss of the letter was "temporary," and the record facts demonstrate that it was, in fact, illusory. Plaintiff has been represented by counsel in both his ongoing federal civil case and his ongoing commitment hearings. As was plaintiff's practice when he received such materials, he forwarded the letter to Cygal after he received it so that Cygal could make a copy for himself, and Cygal subsequently sent the document to plaintiff.

When plaintiff filed his complaint in the instant action in August 2001 (little more than one month after the confiscation of the letter), Cygal provided a copy of the letter to plaintiff so that plaintiff could attach it to the complaint. Plaintiff has provided no explanation for why, if he and/or his Griffin, commitment counsel, needed or wanted a copy of the letter for the July 17, 2001 hearing, they did not simply retrieve it from Cygal at that time (as plaintiff did several weeks later). There is no evidence that he attempted, but failed, to retrieve the letter from his attorney for the July 17th hearing. The record thus indicates that Cygal had possession of the letter all along.

The alleged loss of the document did not prejudice plaintiff in his ability to present his claim because he could have retrieved the document from his civil attorney. Plaintiff's "loss" was not meaningful on a practical level or for constitutional purposes. *Cf., Musgrove*, 2003 U.S. App. LEXIS 17700, at *6-8 (upholding grant of judgment as a matter of law on prisoner's access-to-courts claim on grounds that plaintiff suffered no actual injury; plaintiff could have retrieved a document containing the relevant facts, as compared to the facts contained in the confiscated documents, from either the court or his attorney and, thus, could have filed his lawsuit without the missing documents); *Carr v. McGinnis*, No. 91-3602, 1993 U.S. App. LEXIS 30897, at *4-5 (7th Cir. Oct. 19, 1993) (upholding grant of summary judgment on prisoner's

20

access-to-courts claim on grounds that plaintiff suffered no detriment to pending litigation; confiscation of plaintiff's legal file did not prevent plaintiff from responding to motion for summary judgment in pending litigation, as plaintiff was able to present the material facts of his case on the basis of his personal recollections and thus could have submitted an affidavit based on personal knowledge, in lieu of submitting the confiscated documents).

Even setting aside all of these independent deficiencies in plaintiff's claim, he still has failed to show actual injury through detriment to pending litigation. Plaintiff has been to state court for proceedings relating to his commitment several times since the July 17, 2001 hearing. He has been represented by counsel in connection with his commitment hearings, which he alleges are ongoing. Furthermore, under the clear terms of the Act, plaintiff can readily return to state court to challenge his commitment or his confinement. He has not provided the court with any evidence that he has sought to raise the issue concerning Dr. Heaton's potential perjury or sought an opportunity to impeach Dr. Heaton on this point at any such proceeding. These facts further establishes his inability to show actual injury caused by defendants' conduct. *Cf.*, *Armstrong v. Meyer*, No. 92-2157, 1993 U.S. Dist. LEXIS 20425, at *11-13 (C.D. Ill. May 6, 1993) (granting motion for summary judgment on prisoner's access to the courts claims on grounds that: (1) confiscated documents pertained to state court case that was *still pending* and plaintiff had filed claim for relief in that court; and (2) other confiscated documents pertained to claims in lawsuit plaintiff intended to, but did not, file, which claims he later pursued in subsequent litigation; plaintiff therefore "failed to show any adverse rulings or other detriment" caused by the defendants' challenged conduct).[9]

---

[9] It is also worth noting that plaintiff has presented no evidence suggesting that he sought to challenge the confiscation of his documents in the same manner in which he sought to challenge the

21

Most fundamentally, plaintiff cannot show prejudice because he cannot establish that his underlying claim - that he was no longer "sexually violent" or that he was entitled to release from the Facility - was nonfrivolous. He has presented no evidence from which a jury could conclude that such a claim was nonfrivolous. In light of the above facts – chief among them, that he is still committed to IDHS's custody as an SVP and still residing in the Facility – it is difficult to imagine that he could have done so. In any event, because plaintiff has presented no evidence that his underlying claim was nonfrivolous, he cannot show prejudice, and his claim fails as a matter of law. *See, e.g., Musgrove*, 2003 U.S. App. LEXIS 17700, at *11 (upholding grant of judgment as a matter of law on grounds that, even if deprivation of documents had hindered plaintiff's ability to file lawsuit, plaintiff offered no evidence that the lawsuit would not have been frivolous, and "hindrance of a frivolous claim cannot result in actual injury").

### c. Defendants' intent

Plaintiff's claim also fails because he did not point to sufficient evidence to establish that defendants acted intentionally to deprive him of his right of access to the courts. Plaintiff argued in his brief, "[d]efendants had no reasonable basis for confiscation of his legal documents and therefore their actions in confiscation [sic] of plaintiff's legal documents amounted to an intentional action interfering with plaintiff's access to court and was a constitutional violation." As a matter of simple logic, the sheer "reasonableness" of defendants' action is not a patent indicator of their intent, let alone dispositive of the issue. *Cf., Clayton-El v. Clark*, Nos. 91-2454, 92-4153, 1992 U.S. Dist. LEXIS 22220, at *7 (C.D. Ill. Dec. 3, 1992) (granting summary judgment to defendants on plaintiff's access-to-courts claim, based in part on fact that defendants

---

alleged blocking of his telephone calls – by filing a motion in court in Madison County, where his commitment proceedings are ongoing.

22

confiscated documents that they believed were not related to plaintiff's pending habeas case; although the documents actually may have been relevant to plaintiff's habeas case, the incident could be attributed to "mere overzeal, mistake, or lack of due care," and there was no indication of "an intentional denial of access to the courts").

Here, it is undisputed that defendants Bierman and Powell do not even recall confiscating the letters from Dr. Underwager. Moreover, it is undisputed that they did not know that plaintiff had an upcoming commitment hearing scheduled for July 17, 2001. On the record evidence, plaintiff cannot prove that their action in confiscating the letters constituted an intentional deprivation of his right of access to the courts. His claim fails for this additional and independent reason. *See Kincaid*, 969 F.2d at 602.

### b.     Count II Fails as a Matter of Law.

Count II of the complaint is premised upon defendant Budz's alleged blocking of plaintiff's telephone calls. Plaintiff claims that the blocking of his calls to his attorneys deprived him of his constitutional right of access to the courts.

In their opening memorandum, defendants argued that, on the undisputed facts, Count II of the complaint fails as a matter of law. In responding to defendants' motion for summary judgment, plaintiff failed to contend otherwise and/or to assert any legal argument in support of his claim. He makes only one reference to the claim, itself, in his entire brief, and it is merely a passing reference to the fact that he had alleged the blocking of telephone calls.

Plaintiff thus abandoned the claim set forth in Count II of the complaint, and summary judgment in defendants' favor is proper as to that claim. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the

district court in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n.3 (7th Cir. 2001) (same); *Donelson v. City of Chicago*, 272 F.Supp.2d 717, 726 (N.D. Ill. 2003) (treating plaintiff's harassment claim as abandoned where she merely contended that she was harassed, but provided no legal arguments in support of the claim and "ma[de] no serious efforts to respond to the [defendant's] argument against it" in her summary judgment opposition brief).

Indeed, plaintiff has failed even to delineate his claim, leaving the court with only the vague assertions in his complaint to the effect that defendant Budz deprived him of his ability to make outgoing telephone calls to his attorneys for some period of time of unspecified duration ending approximately three months before he filed his complaint. Summary judgment is proper for that additional, albeit related, reason. *See Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming appellant's negligence claim abandoned, in part because he failed to delineate the claim in his district court brief in opposition to a motion for summary judgment) (citations omitted).

Even if the court were to consider the merits of plaintiff's abandoned claim, the record does not contain sufficient evidence to support the claim, and it would fail as a matter of law.[10]

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted, and plaintiff's complaint is dismissed in its entirety.

---

[10] Because the court finds that plaintiff cannot as a matter of law establish that any constitutional violation occurred, it is unnecessary to address defendants' arguments concerning whether they are entitled to qualified immunity, whether the Eleventh Amendment operates to bar suit against them in their official capacities, and whether defendants Bierman and Powell had personal involvement in the events underlying Count II.

Enter:

_____

David H. Coar
United States District Judge

Dated: January 20, 2004